IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

MONROE G. EVANS III,                )   Case No. 8:24 CV 34
                                    )
                Plaintiff,          )
                                    )
v.                                  )
                                    )
NEBRASKA DEPARTMENT OF              )        COMPLAINT
CORRECTIONAL SERVICES,              )   (WITH JURY TRIAL DEMAND)
CRAIG GABLE,                        )
SCOTT BUSBOOM,                      )
JEFFREY KASSELMAN,                  )
SARA ALLEN,                         )
MICHAEL CARR,                       )
                                    )
                Defendants.         )

COMES NOW the Plaintiff, and for this cause of action, hereby alleges and

avers the following facts:

1.   Plaintiff, Monroe G. Evans III ("Evans"), is an inmate housed in the

Tecumseh State Correctional Institution ("TSCI"). His mailing address is P.O.

Box 900, Tecumseh, NE 68450.

2.   Defendant Nebraska Department of Correctional Services ("NDCS") is an

agency of the State of Nebraska. Its mailing address is P.O. Box 94661, Lincoln,

NE 68509. It is being sued in its official capacity only.

3.   Defendant Craig Gable ("Gable") was at all relevant times employed by

NDCS as the Warden of TSCI, and is an agent of the State of Nebraska. His mailing

address is P.O. Box 900, Tecumseh, NE 68450. He is being sued in his individual

and official capacities.

4.   Defendant Scott Busboom ("Busboom") was at all relevant times employed

by NDCS as the Deputy Warden of TSCI, and is an agent of the State of Nebraska.

His mailing address is P.O. Box 900, Tecumseh, NE 68450. He is being sued in

his individual and official capacities.

5.    Defendant Jeffrey Kasselman ("Kasselman") was at all times relevant hereto a licensed Medical Doctor (M.D.) and employed by NDCS as the Interim Medical Director for NDCS, and is an agent of the State of Nebraska. His mailing address is P.O. Box 94661, Lincoln, NE 68509. He is being sued in his individual and official capacities.

6.    Defendant Sara Allen ("Allen") was at all times relevant hereto employed by NDCS as the Director of Nursing for TSCI, and is an agent of the State of Nebraska. Her mailing address is P.O. Box 900, Tecumseh, NE 68450. She is being sued in her individual and official capacities.

7.    Defendant Michael Carr ("Carr") was at all times relevant hereto employed by NDCS as the Americans with Disability Act ("ADA") coordinator for NDCS, and is an agent of the State of Nebraska. His mailing address is P.O. Box 94661, Lincoln, NE 68509. He is being sued in his individual and official capacities.

8.    This Court is vested with jurisdiction over the claims set forth herein pursuant to 42 U.S.C. § 1983, Title II and Title V of the Americans with Disability Act, and the Rehabilitation Act. Venue is proper with this Court, because the acts alleged herein occurred in the State of Nebraska.

### FACTUAL BASIS OF
### CLAIMS FOR RECOVERY

9.    In January of 2017, prior to his incarceration within NDCS, Evans was shot by officers with the Omaha Police Department during his apprehension. The shooting caused damage to Evans' spinal cord. As a result, Evans was declared to be an "incomplete paraplegic." Evans has minimal function of his lower extremeties. As a result, Evans is confined to a wheelchair.

10.    Evans spent three months in the hospital following the shooting, undergoing numerous surgeries. Thereafter, Evans was transported to the Madonna Rehabilitation Center for physical rehabilitation. As part of Evans' rehabilita-

tion, Evans was prescribed by doctors the use of a leg brace system that enabled Evans to stand and walk with assistance. The leg brace system was prescribed to assist Evans with learning to walk with assistance, as well as to prevent the deterioration of the skeletal musculature, degradation of bone density (known as "osteomalacia"), and to help to build new muscles which may one day permit Evans to walk with the aid of crutches.

11.  Upon release from the Madonna Rehabilitation Center, Evans was prescribed regular treatment with physical therapists, such treatment including the use of the leg brace system. Evans was making progress by leaps and bounds.

12.  Upon conviction and sentence, Evans was delivered into the custody of NDCS in May of 2019. Upon entry into the custody of NDCS, all prescribed medical treatment for Evans' condition was ceased. Despite repeated requests for treatment, no such treatment or physical therapy was provided by NDCS. Upon arrival at TSCI, Evans renewed his requests for treatment, specifically requesting physcial therapy. No treatment was provided. Evans continued to request treatment until, ultimately, TSCI Medical ("Medical") offered physical therapy. The only medical care provided to Evans at TSCI has been physical therapy.

13.  The physical therapist at TSCI to whom Evans was assigned, Ryan, is a skilled therapist with impecable credentials. Ryan determined that Evans would benefit from a more stringent regimen of treatment that he was unable, due to limitations placed upon him by NDCS, to provide. The only treatment that Ryan was authorized by NDCS to provide was placing Evans on a table and manipulating his legs.

14.  Upon entry into TSCI, Evans discovered that the only recreation options provided to the inmate population at TSCI are access to the "Tower Yard," the "Ballfield," or the "Courts." The Tower Yard consists of a small pad of concrete with weight lifting equipment attached thereto, surrounded by grass and encir-

cled by a fence. Evans is unable to attend recreation on the days that his Housing
Unit ("Unit") is assigned to the Tower Yard, due to the lack of accessibility,
because his wheelchair is unable to navigate the grassy area that surrounds the
concrete pad. No other recreation options are provided to Evans on the days that
his Unit is assigned to the Tower Yard. The Ballfield consists of a large grass
area with a baseball diamond and football field, surrounded by a gravel jogging
path. The Ballfield is enclosed by a large fence, and entry into the Ballfield
requires a significant step down from the concrete sidewalk onto the gravel path.
The gravel path itself consists of pea sized chips of rock, and is rutted from
use.  The grass area is interspersed with clumps of weedy grass and clods of
dirt. Evans is unable to attend recreation on the days his Unit is assigned to
the Ballfield, due to lack of accessibility, because his wheelchar is unable
to navigate the step down, the rutted gravel track, or the weedy and clodded
grass. No other recreation options are provided to Evans on the days that his
Unit is assigned to the Ballfield. The Courts consist of a large pad of concrete
and asphalt with weight lifting equipment attached thereto, two basketball courts,
and a gravel area with four handball courts. The Courts is the only recreational
area at TSCI accessible to Evans (with exception of the handball court area),
and is only provided to Evans once or twice per week for one hour at a time.
As a result, Evans is permitted outdoor recreation at TSCI for only one or two
hours per week, whereas all other inmates (who are able to access the other rec-
reation options) ar epermitted fourteen hours of recreation time per week.

     15.  In late 2022, Evans spoke with the physical therapist, Ryan, about
his desire to walk (with the aid of crutches), as well as about concerns he was
having regarding nerve pain ("pins and needles") the he was experiencing in his
legs, which has affected his daily life and cause Evans to endure iterative bouts
of sleeplessness. Ryan evaluated Evans and determined that Evans is experiencing

the atrophy and "wasting" of the musculature of his legs, as well as Osteomalacia (loss of bone density), caused by lack of use and mobility, and that such condition is the result of insufficient rehabilitative therapy. Ryan discussed with Evans different options for the treatment and management of his condition. After evaluation and testing, Ryan recommended the use of a leg brace system, similar to that which was prescribed and used by Madonna Rehabilitation prior to Evans' incarceration. Ryan indicated that the leg brace system would allow Evans to rebuild muscle and abate the deterioration of his bones, as well as permit Evans to stand with the aid of crutches. The leg brace systems recommended by Ryan are made up mostly of plastic, cloth, and Velcro, with a small portion of the hinge consisting of metal, similar to those which TSCI and NDCS provides to other inmates for treatment of other conditions involving hips, knees, and elbows. Ryan indicated that the use of the leg brace system could possibly permit Evans to gain partial use of his legs with the aid of crutches, which would in turn permit Evans to access the same recreational opportunities afforded the inmate population. Ryan provided Evans with print outs of several leg brace system options that are availible on the market and would meet Evans' needs. Ryan agreed to store the leg brace system in his department within Medical, and to incorporate the leg brace system into the course of Evans' physical therapy.

16. NDCS Policy permits inmates to make an ADA Accomodation Request to any NDCS staff member. That staff member is, in turn, required to submit such request to NDCS's ADA Coordinator for approval. NDCS Policy permits denial of such request for reasonable accomodation ONLY if there is "clear and convincing evidence" that such accommodation would pose a risk tot he safety and security of the facility.

17. In March of 2023, Evans presented the leg brace system options to Defendand Sara Allen for review and approval of the reasonable accommodation and medical treatment. Evans informed Allen that the leg brace systems recommended by Ryan

are similar to those prescribed prior to his incarceration and have been medically indicated by the physical therapist (Ryan). Allen agreed that a leg brace system would be beneficial to Evans' rehabilitation and treatment, and agreed to proceed with the process of having them approved and acquired. Allen advised Evans that the process would require approval from Defendant Jeffrey Kasselman, the Interim Medical Director for NDCS.

18.  Upon approval by Allen, Evans drafted a request to Kasselman, requesting approval of the leg brace system. Evans included with his request a copy of the product information sheet provided by Ryan for the leg brace system that he desired. Evans advised Kasselman that Evans would be willing to pay the expense of the leg brace system, in the event that cost was a concern. On May 11, 2023, Kasselman drafted a letter in response to Evans' request. Kasselman determined that the leg brace system is an "elective procedure." An elective procedure is a medically necessary treatment that is "performed to improve the patients health" and to "distinguish emergency procedures from those that can be scheduled at the convenience of the doctor and patient." (See e.g. Perez v. Midek Co., 711 F.3d 1109, 1116 (9th Cir. 2013)). Kasselman wrote: "You are approved to buy the leg braces attached to your letter (copy attached) at your own expense pending the leg braces provide no security concerns."

19.  Upon receipt of the diagnosis of this elective procedure and approval for purchase from Kasselman, Evans spoke with Allen to make the arrangements. Rather than follow NDCS's ADA Policy, Allen contacted Defendant Craig Gable and Defendant Scott Busboom to discuss "security concerns." Allen informed Evans that Gable and Busboom had denied the request for the leg brace system, citing security concerns. No explanation of the security concern was provided, clear and convincing or otherwise.

20.  On May 21, 2023, Evans submitted a request to Gable and one to Busboom,

requesting an audience to discuss the leg brace system. Gable responded to Evans' request on May 24, 2023, without granting an audience, indicating that the leg brace system was not "medically required" and would pose a "security concern due to the potential for weapons." Busboom responded to Evans' request on May 30, 2023, without granting an audience, indicating that "If these items were medically indicated NDCS would purchase them."

21.  On May 26, 2023, Evans submitted an "Informal Grievance Respolution Form," in accordance with NDCS Policy, appealing the denial of the leg brace system. Evans' indicated in his grievance that the leg brace system is comprised of plastic, and that it could be stored in Medical and used as a therapeutic device during regularly scheduled physical therapy appointments with Ryan. Evans argued that the leg brace system was medically necessary, as evidenced by Ryan's recommendation and Kasselman's classification of them as an elective procedure. NDCS responded to the grievance on June 6, 2023, indicating that Evans' "current level of mobility is not affected" by the denial of the leg brace system.

22.  On June 7, 2023, Evans submitted a "Step One" grievance, appealing the determination of the Informal Grievance, in accordance with NDCS Policy. Busboom responded to the grievance on June 9, 2023, indicating that the "leg braces were denied due to Safety and Security of the Facility and Medical reports these are not medically indicated as your current level of mobility is not affected." [sic].

23.  On June 19, 2023, Evans submitted a "Step Two" grievance, appealing the determination of the Step One grievance, in accordance with NDCS Policy. Deputy Director Robert Madsen responded to the grievance on June 23, 2023, indicating that Kasselman "defers to TSCI Medical to determine if these braces are medically necessary." The response goes on to state that "TSCI Medical does not deem them to be medically necessary and TSCI Administration has denied them due to safety

and security concerns."

24.  In mid-2023, Evans signed up for Home Builders Initiative ("HBI") Carpentry and Electrical training classes at TSCI. HBI is a class offered to the inmate population of TSCI, and is provided in part due to federal funding. Evans was approved and assigned to attend the classes. Upon attending the class, Evans was told by the HBI instructor (Graham) that he could not participate in the class, because he cannot stand up. Evans filed a grievance with Defendant Michael Carr, pursuant to NDCS's ADA Policy. Thereafter, Evans was informed by Graham that Evans may participate in the "book" portion of the training, but because he cannot stand, he would not be able to participate in the "physical" portion of the training and, thus, would be unable to obtain the certification that is provided to all other inmates who participate. Evans informed Graham that he is attempting to obtain the reasonable accomodation of a leg brace system, which would allow him to stand. Graham advised Evans that, if he were able to obtain the leg brace system and could stand for the physical portion of the training, Evans would be permitted to obtain the certification.

25.  In July of 2023, Evans submitted a second complaint to Carr, alleging that NDCS is violating his rights under the ADA and Rehabilitation Act, and that he is being denied prescribed and medically necessary rehabilitative therapy that would accommodate his disability. Carr responded to Evans' complaint on August 10, 2023, indicating that Evans' "request for leg braces is being referred to Medical." Carr did not address Evans' request as it pertains to the reasonable accommodation of his disability. No mention of security concerns was made or alleged. A copy of this letter and response was delivered to Allen.

26.  Due to the limitations of the facility showers within NDCS, Evans has been accommodated with access to the accessible shower found in the Skilled Nursing Facility ("SNF") within Medical. Shortly after Evans received the response

from Carr (described in paragraph 26 above), Evans spoke with Allen during his regularly scheduled shower in SNF. Allen informed Evans that she had received a copy of Evans' complaint and Carr's response regarding the leg brace system. The conversation became heated, with Allen ultimately indicating that she made the decision to deny the leg brace system and that she would only approve the leg brace system is Evans remained Misconduct Report ("MR") free for a total of one year, which would prevent Evans from receiving treatment for an additional two months.

27.  On August 16, 2023, Evans once again submitted a complaint to Carr, indicating that TSCI Medical, specifically Allen, is placing undue, irrelevant, and unfair contingencies upon his medical needs, to wit, requiring him to remain MR free in order to obtain treatment. Carr responded to Evans' complaint on August 22, 2023, indicating that he would not address Evans' concerns, because his "concern is with Medical." A copy of this complaint and response was delivered to Allen.

28.  Shortly after Evans received the copy of Evans' letter and Carr's response (described in paragraph 27 above). Allen confronted Evans during his allotted shower time in SNF. Allen informed Evans that she is aware he is preparing to file a lawsuit against her for denying the leg brace system, and that she would never approve the leg brace system. Allen further informed Evans that she would no longer be permitting him access to physical therapy with Ryan. No other treatment or rehabilitative care was offered, and all medical care for Evans' condition has ceased.

29.  In the first days of September of 2023, Evans spoke with Busboom about his lack of treatment and the leg brace system. Evans informed Busboom that the leg brace system could be stored in Medical and used during physical therapy with Ryan until which time any security concerns were addressed. Busboom agreed to the

acquisition and use of the leg brace system under those conditions if Allen was "fine with the burden."

30.  Evans followed up the conversation described in paragraph 29 above with a written request to Busboom, reiterating his request for the leg brace system to be acquired and used in Medical to eliminate any security concerns. Busboom responded to Evans' request on September 11, 2023, indicating that Allen was now denying the leg brace system because "she does not have the resources to support this type of services," despite the fact that Evans would be willing to purchase the leg brace system and Ryan, not Allen would be providing the requested therapy.

31.  In the months that followed the events described herein, supra, Allen has confronted Evans on numerous occasions during his regularly scheduled shower time in SNF. In the presence of other inmates and nursing staff, Allen spoke about Evans' intent to file a lawsuit against her. Allen has tried to convince Evans to not file the lawsuit by attempting to elicit sympathy, stating, "Why would you want to sue me? I don't have any money." Allen further attempted to disway Evans by threatening to recind Evans' "privilege" of using the accessible shower in SNF. Despite Allen's attempts, Evans has continued to pursue his treatment.

32.  Evans filed a grievance (Informal, Step One, and Step Two), alleging that Allen's retaliatory actions. NDCS (through its designees) refused to address the allegations, stating: "[T]his grievance is being returned unanswered ... as this subject has already been addressed in [a prior] grievance response and as the decision of the Director/designee is final and constitutes exhaustion of all administrative remedies available to you through the grievance process." Accordingly, Evans has exhausted all of his administrative remedies on the actions and events described herein this Complaint, supra.

FIRST THEORY OF RECOVERY
ADA AND REHABILITATION ACT
(DISCRIMINATION IN HBI TRAINING)

33.  Evans has the right, pursuant to federal law, to wit, the ADA and Rehabilitation Act, to be free of discrimination on the basis of his disability. A public entity may not afford an opportunity to non-disabled individuals that is not equal to that afforded to disabled individuals. NDCS is reqwuired by law, and pursuant to its own policies and procedures, to provide Evans with the reasonable accomodation of his disability, to include be be not limited to providing assistive devices and technology that will permit Evans to participate in programs and services for which he is qualified.

34.  Evans is a qualified individual, by way of the injuries sustained as a result of being shot nine times by law enforcement. He is an "incomplete paraplegic" who is currently confined to a wheel chair. Evans requested and NDCS has refused to provide the assistive devices and technology that has been medically indicated by the NDCS physical therapist (Ryan), which would enable Evans to stand and, thus, permit him to participate in the physical portion of the HBI training, fo which he is qualified.

35.  NDCS has denied Evans participation, equal to that of a non-disabled individual, in a federally funded, state provided, educational training program, to wit, the HBI training program. Evans was told that he would not be afforded the equal opportunity provided non-disabled individuals, based solely on Evans' inability to stand.

36.  The disperate opportunity and exclusion of Evans in the HBI training program is based solely on Evans' disability. Evans was enrolled in the HBI training program. However, upon discovering that Evans is disabled, the administrators of the HBI training program informed Evans that he may participate in the program but would not be permitted to complete the training and receive the certification

provided to non-disabled individuals whoa re participating. Evans was informed that he could obtain the certification only if he obtained treatment for his disability that would permit him to stand.

37. NDCS is liable in its capacity as an agency of the State of Nebraska, pursuant to Title II of the ADA and the Rehabilitation Act, because its agents have violated the rights of Evans by excluding Evans from a federally funded educational program for which Evans is qualified and eligible to participate in. Gable, Busboom, Allen and Carr are liable, each of them in their individual capacities, for the discrimination of Evans, pursuant to Title II of the ADA and the Rehabilitation Act, because each of them, as agents of the State of Nebraska, acting under color of law, did personally take steps that resulted in the discrimination of Evans. Gable, Busboom, Allen, and Carr each took steps that denied Evans the medical treatment and rehabilitation opportunities, as well as the assistive devices and technology, that would have permitted Evans to stand and, ultimately, complete the physical portion of the HBI training program, denying Evans the equal opportunity of non-disabled individuals.

SECOND THEORY OF RECOVERY
ADA VIOLATIONS
(DISCRIMINATION IN RECREATIONAL ACTIVITIES)

38. Evans has the right, pursuant to the ADA, to be free of discrimination on the basis of his disability. A public entity may not afford an opportunity to non-disabled individuals that is not equal to that afforded disabled individuals. NDCS is required by law, and pursuant to its own policies and procedures, to provide Evans with the reasonable accomodation of his disability, to include but be not limited to providing assistive devices and technology that will permit Evans to participate in programs and services for which he is qualified.

39. Evans is a qualified individual, by way of the injuries he sustained as a result of being shot nine times by law enforcement. He is an "incomplete

paraplegic" who is confined to a wheel chair. Evans requested and NDCS has refused to provide the assistive devices and technology that has been medically indicated by the NDCS physical therapist (Ryan), which would enable Evans to stand and, thus, permit him to participate in the recreational activities afforded him at TSCI.

40. NDCS has denied Evans full participation in the recreational activities afforded all other inmates at TSCI, to wit, access to the Tower Yard and Ballfield for fourteen hours per week. NDCS has not afforded Evans with any other equal opportunity for recreation. Evans' recreation is limited to only a couple of hours per week.

41. Evans' exclusion in the recreational activities afforded other inamtes at TSCI is based solely on his disability. Evans is unable to participate in the recreational activities afforded other inmates at TSCI, because Evans is being confined to a wheel chair by NDCS's refusal to provide Evans with the assistive devices and technology that has been medically indicated by NDCS's physical therapist (Ryan). Therefore, Evans' is unable to access the yards afforded him for recreational activities. Evans would be able to participate in the equal recreational activities afforded other inmates at TSCI if he were able to obtain treatment and braces that would permit him to stand and walk with the aid of crutches.

42. NDCS is liable in its capacity as an agency of the State of Nebraska, pursuant to Title II of the ADA, because it is an agency of the State of Nebraska and its agents have taken action that denies Evans the reasonable accomodation of his disability and equal opportunity to participate in programs and services afforded non-disabled individuals. Gable, Busboom, Allen, and Carr are liable, each of them in their individual capacities, for the discrimination of Evans, pursuant to Title II of the ADA, because each of them, as agents of the State

of Nebraska acting under color of law, did personally take steps that resulted in the discrimination of Evans. Gable, Busboom, Allen, and Carr each took steps that denied Evans the medical treatment and rehabilitation, as well as the assistive devices and technology, that would permit Evans to stand and walk and, ultimately, to access the recreational activities that are exclusively offered to inamtes at TSCI.

THIRD THEORY OF RECOVERY
ADA VIOLATIONS
(REASONABLE ACCOMMODATION)

43. Evans has the right, pursuant to Title II of the ADA, to have the reasonable accommodation of his disability. A public entity must provide a reasonable accommodation to a disabled individual. NDCS is required by law and its own policies and procedures, to provide Evans with the reasonable accommodation of his disablity, to include but be not limited to providing assistive devices and technology that would permit Evans to participate in programs and services for which he is qualified.

44. NDCS Policy permits Evans to request the reasonable accommodation of assistive devices and technology that would enable him to participate in programs and services that he is qualified for and to promote independent living. The Policy specifies steps that must be taken to facilitate such a request.

45. Evans is a qualified individual, by way of the injuries he sustained as a result of being shot nine times by law enforcement. He is an "incomplete paraplegic" who is confined to a wheel chair. Evans requested and NDCS has refused to provide Evans with the assistive devices and technology that has been medically indicated by the NDCS physical therapist (Ryan), which would enable Evans to stand and, thus, permit him to participate in programs and services that are afforded non-disabled individuals.

46. NDCS is liable in its capacity as an agency of the State of Nebraska,

pursuant to Title II of the ADA, because its agents have violated Evans' rights
by denying Evans' request for reasonable accommodation of his disablity. Gable,
Busboom, Allen, and Carr are liable, each of them in their individual capacities
and official capacities, for refusing to provide the reasonable accommodation
of Evans' disability, because each of them, as agents of the State of Nebraska
acting under color of law, did personally take steps that resulted in the denial
of Evans' request for reasonable accommodation. Gable, Busboom, Allen, and Carr
each took steps that denied Evans the medical treatment and rehabilitation, as
well as the assistive devices and technology, that would permit Evans to stand
and, ultimately, denied Evans the equal opportunity to participate in programs
and services afforded non-disabled individuals.

FOURTH THEORY OF RECOVERY
ADA AND FIRST AMENDMENT VIOLATIONS
(RETALIATION)

47. Evans has the right, pursuant to Title V of the ADA, as well as the
First Amendment tot he United States Consitution, to be free from retaliation
for the exercise of protected speech.

48. The ADA provides that a qualified individual has the right to seek
the reasonable accommodation of a disability and redress for any denial of such
request, and to be free from adverse action for exercising such right. The First
Amendment to the United States Constitution provides that an individual may seek
redress of a grievance against a government agency and its agents, and to be
free from adverse action for exercising such right.

49. Evans exercised his rights under the ADA and the First Amendment when
he sought the reasonable accommodation of his disability, to wit, assistive
devices (leg braces), that would have permitted him equal participation in programs
and services afforded non-disabled individuals within NDCS. He further exercised
his rights when he sought medical care for the pain and physical deterioration

that he suffered as a result of the insufficiency of the treatment that he was being provided. He further exercised his rights by seeking redress for the denial of such pursuits, by filing grievances and pursuing legal action against the participants.

50. Allen took adverse action against Evans for the exercise of his rights, when Allen began a campaign of harassment against Evans. Allen confronted Evans on numerous occasion, and attempted to intimidate Evans against his efforts of redress. When Evans refused to be intimidated, Allen specifically and unequivically threatened to withdraw Evans from the prescribed treatments that he was being provided, to wit, physical therapy with Ryan. Evans' participation in physical therapy with Ryan is medically indicated and prescribed. Allen followed through with her threat, withdrawing Evans from physical therapy. Allen had no other reason, except to attempt to chill Evans' from continuing his pursuit of redress, for withdrawing Evans from physical therapy.

51. NDCS is liable in its capacity as an agency of the State of Nebraska, pursuant to the ADA, because one of its agents, specifically Allen, took steps to violate the rights afforded Evans by the ADA by retaliating against Evans for the exercise of his right to seek redress under the ADA. Allen is liable, pursuant to the ADA and the First Amendment, because Allen, personally and as an agent of the State of Nebraska acting under the color of law, did take adverse action against Evans for the exercise of protected conduct, to wit, the right to seek redress of grievances.

PRAYER

WHEREFORE, the Plaintiff prays for monetary relief against the Defendants, each of them in their individual capacities, in the amount of $1,000,000 for violation of his rights under the ADA as described in the First Theory of Recovery (paragraphs 33 through 37) above, as they relate to the HBI training program.

Plaintiff further prays for monetary relief against the Defendants, each of them in their individual capacities, in the amount of $1,000,000 for violation of his rights under the ADA as described in the Second Theory of Recovery (paragraphs 38 through 42) above, as they relate to recreational activities.

Plaintiff further prays for monetary relief against the Defendants, each of them in their individual capacities, in the amount of $1,000,000 for violation of his rights under the ADA as described in the Third Theory of Recovery (paragraphs 43 through 46) above, as they relate to the reasonable accommodation of his disability.

Plaintiff further prays for monetary relief against Defendant NDCS, in its official capacity, and Allen, in her individual capacity, each of them, in the amount of $1,000,000 for violation of his rights under the ADA and First Amendment as described in the Fourth Theory of Recovery (paragraphs 47 though 51) above, as they relate to the retaliatory actions of Allen.

Lastly, Plaintiff further prays for declaratory relief and injunctive relief against the Defendants, each of them in their official capacities, to include but be not limited to a declaration of the Plaintiff's right to equal participation in the programs and services provided by NDCS, the reasonable accommodation of his disability (by way of assistive devices and technology) that will allow the Plaintiff to participate in the programs and services provided by NDCS, and freedom from retaliation for exercise of his rights; and, an injunctive order preventing the Defendants from further actions that deprive the Plaintiff

of those rights; as well as, an order requiring the Defendants to provide the Defendant with those assistive devices and technology that Ryan prescribed.

RESPECTFULLY SUBMITTED,

MONROE G. EVANS III
Plaintiff, pro se
P.O. Box 900
Tecumseh, NE 68450

Dear Clerk:

Please find enclosed a Complaint that I would like filed. I will be paying the filing fee by check, but I need to know the exact amount. Please let me know as soon as possible, and I will remit payment.

Thank you,

Monroe G Evans III
P.O. Box 900
Tecumseh, NE 68450



RECEIVED

JAN 3 0 2024

CLERK
U.S. DISTRICT COURT

Monroe G. Evans III
P.O. Box 900
Tecumseh, NE 68450





quadient
CORRECTION
IMI
$000.07
01/28/2024 ZIP 6845
043M31235529

United States District Court
Attn: Clerk of the Court
111 So. 18th Plaza. Ste. 1152
Omaha, NE 68102-1322

RECEIVED
JAN 3 0 2024
CLERK
U.S. DISTRICT COURT

NOTICE! THIS CORRESPONDENCE
WAS MAILED BY AN INMATE CONFINED
IN AN INSTITUTIONAL FACILITY OF
THE NEBRASKA DEPARTMENT OF
CORRECTIONAL SERVICES. ITS CONTENTS
ARE UNCENSORED.

Legal mail

Legal mail

Legal mail

Legalmail

Legalmail